IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FRANKO MAPS LTD.,                    )    CIVIL 16-00600 LEK-RLP
                                     )
          Plaintiff,                 )
                                     )
     vs.                             )
                                     )
FRANK NIELSEN; CYNTHIA               )
NIELSEN; GREEN PLANET MAPS,          )
LLC; GALE DEAN LATTMAN doing         )
business as H2O TO GO MAPS;          )
DEREK T. HERMON; BEAR VALLEY
BIKES SPEED-EVOLUTION, INC.,
PALM TRADERS LLC; VICKI
WHITTER,

          Defendants.
_____

**<u>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS</u>**

          Before the Court are: pro se Defendant Gale Dean

Lattman's ("Lattman") Motion to Dismiss ("Lattman Motion"), filed

on February 19, 2017; and Defendants Derek Hermon ("Hermon") and

Bear Valley Bikes Speed-Evolution's ("Bear Valley" and

collectively "Bear Valley Defendants") Motion to Dismiss ("Bear

Valley Motion"), filed on June 9, 2017.  [Dkt. nos. 19, 44.]

Plaintiff Franko Maps, Ltd. ("Plaintiff") filed its memorandum in

opposition to the Lattman Motion ("Lattman Opposition") on

April 6, 2017, and its memorandum in opposition to the Bear

Valley Motion ("Bear Valley Opposition") on July 24, 2017.  [Dkt.

nos. 25, 49.]  Lattman filed his reply declaration in support of

his motion ("Lattman Reply Declaration") on April 13, 2017,[1] and the Bear Valley Defendants filed their reply on July 31, 2017. [Dkt. nos. 28, 51.] These matters came on for hearing on August 14, 2017. The Lattman Motion and the Bear Valley Motion ("the Motions") are hereby granted in part and denied in part for the reasons set forth below. The Motions are denied as to Count VII and the Motions are granted insofar as all of Plaintiff's other claims are dismissed without prejudice. All other requests in the Motions are denied.

BACKGROUND

Plaintiff filed its original Complaint on November 7, 2016. Plaintiff filed its Amended Complaint on November 15, 2016. [Dkt. no. 12.] The Amended Complaint names the following Defendants: Frank Nielsen ("F. Nielsen"); Cynthia Nielsen ("C.B. Nielsen"); Green Planet Maps, LLC ("Green Planet"); Lattman; Hermon; Bear Valley; Palm Traders LLC ("Palm Traders"); and Vicki Whitter ("Whitter"). According to Plaintiff, Defendants Frank and Cynthia Nielsen ("the Nielsens") are Green Planet's managing members. [Amended Complaint at ¶ 4.] Only the factual allegations regarding Lattman and the Bear Valley Defendants are relevant to the instant Motions.

---

[1] The Lattman Reply Declaration filed on April 13, 2017 did not have an original signature. Lattman filed another version with an original signature on April 17, 2017. [Dkt. no. 29.]

I.  **Allegations Regarding Lattman**

Plaintiff states that, beginning on January 21, 2005, Lattman, doing business as H2O to Go Maps ("H2O"), began purchasing Plaintiff's maps as a wholesale distributor and selling them at retail stores at wholesale prices.  [Id. at ¶¶ 5, 11.]  In July 2005, Plaintiff and Lattman verbally agreed that Lattman would be its distributor for the California Delta area. [Id. at ¶ 15.]  On July 31, 2005, Plaintiff first sold Franko's California Delta Adventure Guide ("Delta Map") and Franko's California Delta Fish Identification Guide ("Delta Fish Card") to Lattman, in bulk, at distributor prices.  Both products had a copyright notice printed on them.  Plaintiff sold additional shipments of the Delta Maps and the Delta Fish Cards to Lattman on: December 31, 2006; April 7, July 13, and November 14, 2011; February 28, May 22, June 6, and June 10, 2012.  From 2007 to early 2011, Plaintiff made bulk distributor sales to Lattman through a subsidiary – Franko Maps LLC.  [Id. at ¶¶ 12-14, Exhs. A-B (list of invoices and products sold).]

Lattman would only deal with Plaintiff through F. Nielsen, who – at the time – was both an employee and a part owner of the company.  [Id. at ¶ 16.]  On August 27, 2012, Plaintiff's Board of Directors terminated F. Nielsen as an officer and employee for cause.  In an email dated August 28, 2012, Plaintiff: informed Lattman of the termination; instructed

him that all future communications with it must take place through the current officers, not through F. Nielsen; and informed him that it owned all of the company's intellectual property ("8/28/12 Email"). Plaintiff also sent Lattman a letter with substantially the same information. [Id. at ¶¶ 17-18, Exh. E (8/28/12 Email).] Along with the 8/28/12 Email and letter, Plaintiff provided Lattman with a copy of F. Nielsen's work for hire agreement ("Nielsen Agreement"), which confirmed that Plaintiff owned the copyright to all of its publications, including the Delta Map and Delta Fish Card, and all of the intellectual property created by F. Nielsen prior to his termination. [Id. at ¶ 19, Exh. F (F. Nielsen Agreement).]

Plaintiff alleges that, sometime after his termination, F. Nielsen created derivative works using property that he failed to return to Plaintiff, including a computer, software, and intellectual property files. The derivative works included "Famous Franko's California Delta Map," which Plaintiff alleges infringes upon Plaintiff's Delta Map. [Id. at ¶ 20.] Lattman distributed Famous Franko's California Delta Map, and another version of it, under his H2O to Go band. [Id. & Exh. G (copies of illustrative portions of the allegedly infringing maps).] Plaintiff also alleges, upon information and belief, that Lattman distributes a product which infringes upon the Delta Fish Card. F. Nielsen allegedly created the product using Plaintiff's

computer, software, and intellectual property.  [<u>Id.</u> at ¶ 21.]

Plaintiff filed a civil action against F. Nielsen and others in this district court.  [<u>Franko Maps Ltd., et al. v. Trident Diving Equipment, et al.</u>, CV 13-00637 LEK-KSC ("<u>Franko Maps v. Trident</u>"), Complaint, filed 11/20/13 (dkt. no. 1).]  On December 2, 2013, Plaintiff filed an amended complaint alleging copyright infringement and other claims.  [<u>Franko Maps v. Trident</u>, dkt. no. 5.]  Plaintiff entered into a Settlement Agreement with F. Nielsen.  This Court filed a consent judgment with a permanent injunction against F. Nielsen and Jonathan Nielsen ("Permanent Injunction") on March 18, 2014.  [<u>Id.</u>, dkt. no. 27.]  The Amended Complaint in the instant case notes that, in the Permanent Injunction, F. Nielsen admitted to committing copyright infringement and agreed not to commit further infringements, including making further derivatives or products that contained the same locations, subject matter, or titles as Plaintiff's products.  Plaintiff emphasizes that the Settlement Agreement did not release Lattman, the Bear Valley Defendants, Whitter, or Palm Traders.  [Amended Complaint at ¶ 23, Exh. H (Permanent Injunction and Settlement Agreement).]  The Permanent Injunction applies to "Frank Nielsen and Jonathan Nielsen, and their agents, servants, representatives, employees, assigns, successors, affiliates, attorneys, or licensees, any persons, businesses, corporations, limited liability companies, or

entities acting by, through, under, in concert, or in participation with them." [Id., Exh. H (Permanent Injunction) at 2.]

Plaintiff registered its copyright for the Delta Map on August 6, 2013. Its registration number is VA0001899229. Plaintiff registered the Delta Fish Card copyright on August 12, 2013, registration number VA0001898361. [Id. at ¶ 24, Exh. I (copyright registration information, excerpts of the Delta Map and entire Delta Fish Card).] Plaintiff alleges that, from a comparison of the Delta Map and the product Lattman distributed, the infringement is obvious. [Id. at ¶ 24, Exh. J (excerpts of Delta Map and excerpts of allegedly infringing map).]

Plaintiff alleges that Lattman "willfully engaged in a course of conduct that infringes upon [Plaintiff]'s copyright rights by creating, displaying, offering, and/or selling derivative works and/or substantially similar copies of [Plaintiff]'s intellectual property, without the consent or authorization of [Plaintiff], and displaying, offering for sale, and selling such infringing items." [Id. at ¶ 25.] Some of the infringing items bore Plaintiff's name, while others bore the name "Famous Franko's Maps" or H2O to Go. Plaintiff alleges, on information and belief, that F. Nielsen worked on the designs of the infringing products using the computer and software that he retained from his employment with Plaintiff. Plaintiff suspects

F. Nielsen and Green Planet helped to create the H2O to Go Delta map – and other infringing products that Plaintiff expects to find in discovery – after the Settlement Agreement.  Thus, these infringements were not released in the Settlement Agreement and they are violations of the Permanent Injunction.  [Id.] Plaintiff alleges that these infringements and violations have caused it to suffer significant damages.  [Id. at ¶ 26.]

In addition, Plaintiff alleges that Lattman's products which contain the name "Famous Franko's Maps" infringe upon Plaintiff's "Franko's Maps" trademark.  [Id. at ¶ 27.]  Further,

> the H20 to Go map falsely claims that "Dean Lattman H20 to Go" owns the copyright to that map and falsely states "Fabulous Maps of the California Delta Since 2002.  Compiled by H20 Maps to Go" whereas [Plaintiff] was the designer and creator of the copyrighted design for those maps, H20 to Go did not compile or create them from 2002 and did not compile or create any Delta maps, and it was instead Frank Nielsen who wrongly created the H20 to Go map by improperly using [Plaintiff's] copyrighted design, which is a false representation under the Lanham Act and common law, and unfair competition and deceptive trade practice. . . .

[Id.]  According to Plaintiff, Lattman's H2O to Go products also contain misleading uses of Green Planet's ISBN prefix to suggest that F. Nielsen and Green Planet created those maps for Lattman's distribution.  Further, Plaintiff alleges that Lattman has accused Plaintiff of fraud because Plaintiff does not own the maps' copyrights and Lattman has represented that he "is 'the real Franko.'"  [Id.]  Plaintiff alleges this is trademark

infringement.  [Id.]

## II.  **Allegations Regarding the Bear Valley Defendants**

According to the Amended Complaint, every year from
2005 until F. Nielsen's termination in August 2012, Plaintiff
sold Hermon its Franko Maps Big Bear trail map – 2005 copyright
registration number VA0001975995 – ("Big Bear Map").  Hermon sold
the Big Bear Map at his store at Big Bear Lake in California and
on his websites.  [Id. at ¶ 32, Exh. O (excepts of Big Bear Map
and copyright registration information).]  Plaintiff alleges that
Hermon knew Plaintiff was a Hawai`i citizen because the bills it
sent him had its Hawai`i address, and Hermon sent checks to
Plaintiff in Hawai`i.  Plaintiff also alleges, on information and
belief, that Hermon knew about: Plaintiff's copyrights to the Big
Bear Map; and F. Nielsen's termination because he stopped buying
maps from Plaintiff.  [Id. at ¶¶ 32-33.]

Plaintiff alleges that, at some point after his
termination, F. Nielsen and Green Planet created derivative works
using Plaintiff's computer, software and intellectual property,
which F. Nielsen had wrongfully retained.  In the Settlement
Agreement and the Permanent Injunction, F. Nielsen admitted that
one of these derivative works – Green Planet Maps Big Bear! &
Lake Arrowhead Trail Map – infringed upon the Big Bear Map.  [Id.
at ¶ 34, Exh. P (excerpts of the Green Planet map).]  The
Settlement Agreement required F. Nielsen not to copy or make

derivatives of Green Planet's Big Bear map or Plaintiff's Big Bear design. Plaintiff alleges, on information and belief, that Hermon distributed Green Planet's infringing map because Hermon did not buy Plaintiff's Big Bear Map after F. Nielsen's termination. [Id. at ¶ 34.]

Plaintiff alleges, on information and belief, that F. Nielsen created an infringing version of the Big Bear Map for the Bear Valley Defendants called "The Definitive Big Bear Trail Map." [Id. at ¶ 34, Exh. Q (excerpts of the Bear Valley Defendants' Big Bear map).] Plaintiff alleges that the Bear Valley Defendants' Big Bear map falsely claimed that Hermon owned the copyright to the design and misleadingly used Green Planet's ISBN prefix. Plaintiff alleges the use of Green Planet's ISBN shows that F. Nielsen and Green Planet created the infringing map for the Bear Valley Defendants. Plaintiff argues that it is obvious from a comparison of its Big Bear Map to Green Planet's version and the Bear Valley Defendants' version that there was wrongful copying. [Id. at ¶ 34, Exh. R (examples of Pltf.'s Big Bear Map, compared to the Green Planet map and the Bear Valley Defendants' map).] Plaintiff alleges, on information and belief, that F. Nielsen's involvement with the Bear Valley Defendants' Big Bear map occurred after the 2013 settlement. [Id. at ¶ 40.]

Plaintiff alleges that F. Nielsen, Green Planet, and the Bear Valley Defendants "willfully engaged in a course of

conduct that infringes upon [Plaintiff]'s copyright rights by creating, displaying, offering, and/or selling derivative works and/or substantially similar copies of [Plaintiff]'s intellectual property, without the consent or authorization of [Plaintiff], and displaying, offering for sale, and selling such infringing items." [Id. at ¶ 35.] Plaintiff alleges, on information and belief, that F. Nielsen designed the infringing products using Plaintiff's computer and intellectual property that he wrongfully retained after his termination. [Id.] Plaintiff argues that the false and misleading information in the infringing maps of Big Bear "constitute false advertising under the Lanham Act, misrepresentation, and unfair competition and deceptive trade practices." [Id. at ¶ 36.]

Plaintiff alleges that the Nielsens, Green Planet, and others acting in concert or participating with them – which may include the Bear Valley Defendants – were prohibited by the Permanent Injunction and the Settlement Agreement "not just from infringing and making or distributing any derivatives, but also from making, having made, displaying, offering, distributing, or selling any map or card dealing with Big Bear or Bear Valley, regardless of how similar or dissimilar it looked from [Plaintiff]'s copyrighted designs." [Id. at ¶ 37 (citing Permanent Injunction at ¶ 2(a); Settlement Agreement at ¶ 4(a)).] Thus, Plaintiff alleges that making, ordering, displaying,

distributing, and selling of either Green Planet's Big Bear map or the Bear Valley Defendants' Big Bear map violated the Permanent Injunction and the Settlement Agreement. [Id.] Plaintiff also argues that, because Green Planet's map and the Bear Valley Defendants' map were obviously made with Plaintiff's trade secrets, software, and intellectual property, the Nielsens, Green Planet, and those acting in concert/participation with them violated the Settlement Agreement and Permanent Injunction, which prohibited the use, retention, distribution, passing on, or keeping of Plaintiff's trade secrets, software, computer files, or other property. [Id. at ¶ 38 (citing Permanent Injunction at ¶ 2(j); Settlement Agreement at ¶ 4(j)).]

Plaintiff alleges that it has suffered and will suffer significant damages as a result of F. Nielsen and the Bear Valley Defendants' wrongful activity, including lost profits and loss of goodwill, trust, and reputation in their industry. [Id. at ¶ 39.]

III. **Plaintiff's Claims and the Pending Motions**

Plaintiff alleges the following claims: copyright infringement ("Count I"); an unfair methods of competition claim under Haw. Rev. Stat. § 480-2 ("Count II"); an unfair and deceptive trade practices claim under Haw. Rev. Stat. § 481A-3 ("Count III"); common law claims of unfair competition, palming off, and trade name and trademark infringement ("Count IV");

11

trademark infringement and counterfeiting, pursuant to 15 U.S.C.
§ 1114 ("Count V"); breach of contract ("Count VI"); violation of
the Permanent Injunction ("Count VII"); and false advertising and
misrepresentation under the Lanham Act and under common law, and
defamation ("Count VIII").

Lattman seeks dismissal of Plaintiff's claims against
him pursuant to Fed. R. Civ. P. 12(b)(2) and (3) for lack of
personal jurisdiction and improper venue.  In the alternative,
Lattman asks this Court to transfer venue to the Eastern District
of California, pursuant to 28 U.S.C. § 1404.  If this Court
rejects these arguments, Lattman seeks dismissal of Counts II,
III, IV, V, and VII pursuant to Rule 12(b)(6).

The Bear Valley Motion also seeks dismissal for lack of
personal jurisdiction and improper venue.  The Bear Valley
Defendants do not seek transfer of venue because they contend
that the claims Plaintiff has included in this case are unrelated
and there is no one venue that is proper for all claims.

### DISCUSSION

## I.  Personal Jurisdiction

In reviewing a Rule 12(b)(2) motion to dismiss for lack
of personal jurisdiction, this Court has stated:

> A plaintiff has the burden of establishing
> personal jurisdiction over a nonresident
> defendant.  See Love v. Associated Newspapers,
> Ltd., 611 F.3d 601, 608 (9th Cir. 2010);
> Schwarzenegger v. Fred Martin Motor Co., 374 F.3d
> 797, 800 (9th Cir. 2004).  A plaintiff must

establish personal jurisdiction over a defendant
with respect to each claim.  <u>Action Embroidery
Corp. v. Atl. Embroidery, Inc.</u>, 368 F.3d 1174,
1180 (9th Cir. 2004) ("Personal jurisdiction must
exist for each claim asserted against a
defendant." (citing <u>Data Disc, Inc. v. Sys. Tech.
Assocs., Inc.</u>, 557 F.2d 1280, 1289 n.8 (9th Cir.
1977)).

    When, as here, a district court acts on a
motion to dismiss without holding an evidentiary
hearing, a plaintiff need only make a prima facie
showing of jurisdictional facts to withstand the
motion to dismiss.  <u>Love</u>, 611 F.3d at 608;
<u>Schwarzenegger</u>, 374 F.3d at 800.  Although a
plaintiff may not simply rest on the bare
allegations of the complaint, uncontroverted
allegations in the complaint must be taken as
true, and conflicts between parties over
statements contained in affidavits or declarations
must be resolved in the plaintiff's favor.  <u>See</u>
<u>Love</u>, 611 F.3d at 608; <u>Schwarzenegger</u>, 374 F.3d at
800.

<u>Barranco v. 3D Sys. Corp.</u>, 6 F. Supp. 3d 1068, 1076 (D. Hawai`i

2014) (some citations omitted).

    The district court considers two factors
before exercising personal jurisdiction over a
nonresident defendant in a diversity of
citizenship case: "(1) whether an applicable state
rule or statute potentially confers jurisdiction
over the defendant; and (2) whether assertion of
such jurisdiction accords with constitutional
principles of due process."  <u>Flynt Distrib. Co. v.
Harvey</u>, 734 F.2d 1389, 1392 (9th Cir. 1984).  "The
jurisdictional inquiries under state law and
federal due process merge into one analysis" when,
as here, the state's long-arm statute is "co-
extensive with federal due process requirements."
<u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620 (9th
Cir. 1991).[2]  <u>See</u> <u>Cowan v. First Ins. Co. of</u>

_____

        [2] Subject matter jurisdiction in the instant case is not
based on diversity jurisdiction, but federal question and
                                        (continued...)

_Hawaii_, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980)
(Hawaii's long-arm statute, Haw. Rev. Stat. § 634-
35, was adopted to expand the jurisdiction of
Hawaii's courts to the extent permitted by the due
process clause of the Fourteenth Amendment). . . .

      The Due Process Clause protects a person's
"liberty interest in not being subject to the
binding judgments of a forum with which he has
established no meaningful 'contacts, ties, or
relations.'" _Burger King Corp. v. Rudzewicz_, 471
U.S. 462, 471-72 (1985) (quoting _Int'l Shoe Co. v._
_Washington_, 326 U.S. 310, 319 (1945)).  The Due
Process Clause requires that defendants have
"certain minimum contacts with [Hawaii] such that
the maintenance of the suit does not offend
traditional notions of fair play and substantial
justice."  _Int'l Shoe_, 326 U.S. at 316; _Data Disc,_
_Inc. v. Systems Tech. Assocs., Inc._, 557 F.2d

---

[2](...continued)
supplemental jurisdiction.  The personal jurisdiction analysis is
the same, except that Fifth Amendment due process rights are also
implicated.

      In a "federal question case [in which] a federally
      created right is at issue, we examine due process
      in light of the fifth amendment rather than the
      fourteenth amendment."  _Dakota Indus., Inc. v._
      _Dakota Sportswear, Inc._, 946 F.2d 1384, 1389 n.2
      (8th Cir. 1991).  Although this is a federal
      question case, the Fourteenth Amendment is also
      involved in that determining whether personal
      jurisdiction is present requires examining the
      forum state's long-arm statute.  _Genetic Implant_
      _[Sys., Inc. v. Core-Vent Corp.]_, 123 F.3d [1455,]
      1458 [(Fed. Cir. 1997)].  Hawaii's long-arm
      statute permits personal jurisdiction to the full
      extent permitted by the Fourteenth Amendment.  The
      due process inquiry in this case therefore
      concerns the protections provided by the Due
      Process Clauses of both the Fifth and Fourteenth
      Amendments, collapsing into a single inquiry.

_Kowalski v. Anova Food, LLC_, Civ. No. 11-00795 HG-RLP, 2012 WL
3308884, at *5 n.1 (D. Hawai`i Aug. 10, 2012) (some alterations
in _Kowalski_).

1280, 1287 (9th Cir. 1977). The minimum contacts required mean that the defendant must have purposefully availed itself of the privilege of conducting activities within the foreign jurisdiction, thereby invoking the benefits and protections of the foreign jurisdiction's laws. See Asahi Metal Indus. Co. v. Sup. Court of Cal., 480 U.S. 102, 109 (1987). In applying Due Process Clause requirements, courts have created two jurisdictional concepts – general and specific jurisdiction.

A court may exercise general jurisdiction over the defendant when the defendant is a resident or domiciliary of the forum state, or the defendant's contacts with the forum state are continuous, systematic, and substantial. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 [104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)]; Data Disc, 557 F.2d at 1287 . . . .

. . . .

Specific jurisdiction, on the other hand, may be found when the cause of action arises out of the defendant's contact or activities in the forum state. See Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991); Data Disc, 557 F.2d at 1287. . . .

Id. at 1077-78 (some alterations in Barranco) (some citations omitted).

A.    **General Jurisdiction**

Although Plaintiff pled general jurisdiction, [Amended Complaint at ¶ 10 (pg. 5),] at the hearing on the Motions, Plaintiff's counsel represented that Plaintiff is not contending that there is general jurisdiction. Based on this representation and its own review of Plaintiff's factual allegations and the relevant case law, this Court concludes that it does not have

15

general jurisdiction over either Lattman or the Bear Valley
Defendants.

B. **Specific Jurisdiction**

1. **Minimum Contacts Analysis**

[The Ninth Circuit] employ[s] a three-part test to
determine if a defendant has sufficient minimum
contacts to be subject to specific personal
jurisdiction:

> (1) The non-resident defendant must
> purposefully direct his activities or
> consummate some transaction with the forum or
> resident thereof; or perform some act by
> which he purposefully avails himself of the
> privilege of conducting activities in the
> forum, thereby invoking the benefits and
> protections of its laws;

> (2) the claim must be one which arises out
> of or relates to the defendant's forum-
> related activities; and

> (3) the exercise of jurisdiction must
> comport with fair play and substantial
> justice, i.e. it must be reasonable.

Brayton Purcell [LLP v. Recordon & Recordon], 606
F.3d [1124,] 1128 [(9th Cir. 2010)] (quoting
Schwarzenegger, 374 F.3d at 802) (internal
quotation marks omitted). As Washington Shoe
bears the burden of establishing the district
court's jurisdiction over A-Z, it must satisfy the
first two prongs. If it does so, then A-Z must
come forward with a "'compelling case' that the
exercise of jurisdiction would not be reasonable."
CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d
1066, 1076 (9th Cir. 2011) (quoting Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S. Ct.
2174, 85 L. Ed. 2d 528 (1985)).

Washington Shoe Co. v. A-Z Sporting Goods, Inc., 704 F.3d 668,
672 (9th Cir. 2012) (footnote omitted).

### a. **Purposeful Direction**

"Purposeful direction requires a defendant to have
(1) committed an intentional act, (2) expressly aimed at the
forum state, [and] (3) causing harm that the defendant knows is
likely to be suffered in the forum state."  Lazar v. Kroncke, 862
F.3d 1186 (9th Cir. 2017) (alteration in Lazar) (citations and
internal quotation marks omitted).  In analyzing whether a
defendant purposefully directed his activities at the forum
state, the district court must focus upon "the relationship
between the defendant, the forum, and the litigation."  Brennan
v. Hawaii, CIV. NO. 17-00163 HG-RLP, 2017 WL 3187215, at *4 (D.
Hawai`i July 26, 2017) (citing Walden v. Fiore, 134 S. Ct. 1115,
1126 (2014)).  Under the Walden analysis, "the relationship must
arise out of contacts that the defendant himself creates with the
forum State," and the court must "look[] to the defendant's
contacts with the forum State itself, not the defendant's
contacts with persons who reside there."  134 S. Ct. at 1122.

Plaintiff argues that Lattman purposefully directed his
activities at Hawai`i because he purchased Plaintiff's maps and
sent payment checks and correspondence to Plaintiff in Hawai`i
from 2005 to 2012.  See Decl. of Peter Cannon ("Cannon Decl."),
filed 4/7/17 (dkt. no. 26), at ¶¶ 29, 32.[3]  Further, it contends

---

[3] The original version of the Cannon Declaration that
Plaintiff filed with the Lattman Opposition was not properly
(continued...)

17

Lattman's sale of the infringing products was expressly aimed at Hawai`i because Plaintiff knew about F. Nielsen's termination and that the intellectual property F. Nielsen used to create the products Lattman distributed after the termination belonged to Plaintiff. Similar arguments are made regarding the Bear Valley Defendants' purposeful direction.

Plaintiff's interactions with Lattman and with the Bear Valley Defendants are insufficient to establish purposeful direction under Walden because these interactions did not create meaningful connections by either Lattman or the Bear Valley Defendants with Hawai`i. See Walden, 134 S. Ct. at 1122 ("the plaintiff cannot be the only link between the defendant and the forum"); id. ("however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated" (citation and internal quotation marks omitted)); id. at 1125 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way"). Plaintiff, however, argues that, in Walden, the United States Supreme Court "expressly said its ruling did not apply to situations involving the Internet." [Bear Valley Opp. at 19

³(...continued)
signed. [Dkt. no. 25-1.] Peter Cannon is Plaintiff's chief executive officer. [Cannon Decl. at ¶ 1.]

18

(citing <u>Walden</u>, 134 S. Ct. 1125 n.9).]

First, no allegation exists in the Amended Complaint that Lattman sold the allegedly infringing products on the Internet. <u>See also</u> Lattman Motion, Decl. of Def. Gale Dean Lattman in Supp. of Def. Gale Dean Lattman's Motion to Dismiss ("Lattman Decl.") at ¶ 7 ("I never offered the maps for sale on the Internet, or advertised them for sale on the Internet."). Plaintiff has not presented any argument why the <u>Walden</u> analysis should not apply to Lattman.

Second, the Supreme Court in <u>Walden</u> stated:

> Respondents warn that if we decide petitioner lacks minimum contacts in this case, it will bring about unfairness in cases where intentional torts are committed via the Internet or other electronic means (*e.g.*, fraudulent access of financial accounts or "Peiching" schemes). As an initial matter, we reiterate that the "minimum contacts" inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291-292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). In any event, this case does not present the very different questions **whether and how a defendant's virtual "presence" and conduct translate into "contacts" with a particular State**. . . . We leave questions about virtual contacts for another day.

134 S. Ct. at 1125 n.9 (emphasis added). Plaintiff's argument that <u>Walden</u> does not apply in cases where the Internet is "involved" goes too far. The Supreme Court merely indicated that the analysis did not apply where jurisdiction was based on a defendant's virtual contacts with the forum state. That is not

the case here. While the Amended Complaint alleges that the Bear Valley Defendants had online sales of the map they collaborated with F. Nielsen on, the Amended Complaint does not allege that the Bear Valley Defendants had a virtual presence in Hawai`i. See also Bear Valley Motion, Decl. of Def. Derek Harmon in Supp. of Defs. Derek Hermon and Bear Valley Bikes Speed-Evolution, Inc.'s Motion to Dismiss ("Hermon Decl.") at ¶ 14 ("none of the maps sold online have been sent to Hawaii.").

Neither Plaintiff's claims against Lattman nor its claims against the Bear Valley Defendants involve the "virtual contacts" to which the Walden analysis are inapplicable. Thus, the Walden analysis applies here, and the contacts with Hawai`i alleged against Lattman and the Bear Valley Defendants are insufficient under that analysis. In sum, Plaintiff has failed to allege that either Lattman or the Bear Valley Defendants purposefully directed their activities to Hawai`i, and the factual allegations of the Amended Complaint are insufficient to allege that either Lattman or the Bear Valley Defendants purposefully availed themselves of the privileges of conducting business in Hawai`i.

### b. Other *Washington Shoe* Prongs

The second Washington Shoe prong requires that the plaintiff's claim arise out of the defendant's forum-related activities. Washington Shoe, 704 F.3d at 672. This factor is

not met because neither Lattman nor the Bear Valley Defendants have forum-related activities.

The third <u>Washington Shoe</u> prong requires that the exercise of jurisdiction over the defendant be reasonable. <u>Id.</u> Exercising jurisdiction over either Lattman or the Bear Valley Defendants would be unreasonable where Plaintiff has not established the first two prongs of the analysis.

This Court therefore concludes that it does not have specific jurisdiction over either Lattman or the Bear Valley Defendants under the minimum contacts analysis.

### 2. *Homa* Analysis

Plaintiff also argues that this Court has specific jurisdiction over Lattman and the Bear Valley Defendants because of their violation of the Permanent Injunction. Plaintiff relies on <u>SEC v. Homa</u>, in which the Seventh Circuit stated:

> [A] person who knowingly circumvents a freeze order is subject to a show cause order and contempt and thereby submits to the jurisdiction of the court for contempt proceedings, as held in <u>Waffenschmidt [v. MacKay]</u>, 763 F.2d [711,] 714 [(5th Cir. 1985)]; Fed. R. Civ. P. 65. "Nonpareils who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum." <u>Id.</u> Jurisdiction over persons who knowingly violate a court's injunctive order, even those without any other contact with the forum, is "necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." <u>Id.</u> at 716.

514 F.3d 661, 674-75 (7th Cir. 2008). The Ninth Circuit, however, has never adopted the Homa analysis. Further, as the Bear Valley Defendants point out, knowledge of the Settlement Agreement and Permanent Injunction between Plaintiff and F. Nielsen only came about when Hermon was served with the Complaint in the instant case. [Hermon Decl. at ¶ 16.] Thus, even if this Court were inclined to follow Homa, the Bear Valley Defendants could not have intentionally violated the Permanent Injunction until after being served with the lawsuit, and they argue that any post-filing violation cannot be the basis for personal jurisdiction over them pursuant to Farmers Insurance Exchange v. Portgage La Prairie Mutual Insurance Co., 907 F.2d 911 (9th Cir. 1990). In Farmers, the Ninth Circuit held that "[only contacts occurring prior to the event causing the litigation may be considered" in the minimum contacts analysis. 907 F.2d at 913.

Farmers, however, does not address the specific issue of whether an alleged intentional violation of a district court's injunction confers personal jurisdiction over a defendant over whom the court would not otherwise have jurisdiction. Homa is directly on point, and its analysis is largely based upon the Federal Rules of Civil Procedure and Supreme Court case law.

> First, a court possesses the independent authority to enforce its own injunctive decrees. [Waffenschmidt, 763 F.2d] at 716. In this respect, Rule 65(d), which governs the contents

and scope of injunctions, must be regarded as a codification rather than a limitation on a federal court's inherent power to protect its ability to render a binding judgment. <u>Berry v. Midtown Serv. Corp.</u>, 104 F.2d 107, 110 (2d Cir. 1939).

Second, the injunctive mandate of a federal court runs nationwide, and the issuing court has the authority to deal with defiance of its order regardless of where that defiance occurs. <u>Waffenschmidt</u>, 763 F.2d at 716. Indeed, the court whose order was defied must enforce the injunction through the contempt power because contempt is, in essence, an affront to the court that issues the order. <u>Id.</u> As the Supreme Court put it in <u>In re Debs</u>:

> [The power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency. . . . [Every court, at least of the superior kind, in which great confidence is placed, must be the sole judge, in the last resort, of concepts arising therein.

158 U.S. 564, 594-95, 15 S. Ct. 900, 39 L. Ed. 1092 (1895), *abrogated in the criminal contempt context as recognized by* <u>United States v. Dixon</u>, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

Third, an injunction binds not only the parties to the injunction but also Nonpareils who act with the named party. Commenting on Rule 65(d), the Supreme Court has noted that the Rule

is derived from the common-law doctrine that
a decree of injunction not only binds the
parties defendant but also those identified
with them in interest, in "privity" with
them, represented by them or subject to their
control.  In essence . . . defendants may not
nullify a decree by carrying out prohibited
acts through aiders and abettors, although
they were not parties to the original
proceeding.

Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14, 65 S.
Ct. 478, 89 L. Ed. 661 (1945).  In Stettler v.
Able, 870 F.2d 1158, 1164 (7th Cir. 1989), we
specifically noted the vitality of this rule and
its implementation through Rule 71.  Indeed, if
courts did not have the power to punish those who
cooperate with those named in an injunction, the
named parties could easily thwart the injunction
by operating through others.

Homa, 514 F.3d at 673-74 (some alterations in Homa).  Further,

Reebok International Ltd. v. McLaughlin, 49 F.3d 1387 (9th Cir.

1995), suggests that the Ninth Circuit would be inclined to adopt

the Homa analysis under circumstances such as those presented in

the instant case.

Homa relied heavily on Waffenschmidt, and in Reebok,

the Ninth Circuit stated:

Although Waffenschmidt speaks in expansive terms,
it was speaking about the authority of district
courts within the United States.  The court
grounded its decision on the simple fact that the
"mandate of an injunction issued by a federal
district court runs nationwide. . . ." [763 F.2d]
at 716.  That being so, the court could hold
enjoined parties in contempt, no matter in what
state they violated the court's orders.  Id.  As
the court went on to say: "The nationwide scope of
an injunction carries with it the concomitant
power of the court to reach out to Nonpareils who
knowingly violate its orders." Id. at 717.  Once

24

the court accepted that proposition, it is not
surprising that it determined that a national
court which could issue nationwide orders could
also reach out and enforce those orders on a
nationwide basis by taking personal jurisdiction
over violators.  Of course, in <u>Waffenschmidt</u> the
individuals held in contempt had accepted assets
from the enjoined party after they knew that he
was enjoined from transferring those assets.  <u>Id.</u>
at 723.

     A finding of personal jurisdiction over the
violators in that instance may be sound, even
necessary. . . .

49 F.3d at 1391-92.  The Ninth Circuit ultimately declined to

apply the <u>Waffenschmidt</u> analysis in <u>Reebok</u> because the plaintiff

was seeking contempt sanctions against Banquet Internationale a

Luxembourg S.A. ("BIL") for violating a district court temporary

restraining order ("TRO").  <u>Id.</u> at 1389, 1392.  The Ninth Circuit

stated:

[The strength of the analysis begins to crumble
when a district court seeks to reach out across
the Atlantic in an attempt to impose conflicting
duties on another country's nationals within its
own borders.  It is a general principle that one
state cannot require a person "to do an act in
another state that is prohibited by the law of
that state or by the law of the state of which he
is a national," nor can the person be required to
refrain from an act that is required.  Restatement
(Third) of the Foreign Relations Law of the United
States § 441(1)(a) (1987).  <u>Cf.</u> <u>In re</u>
<u>Establishment Inspection of Her Iron Works</u>, 881
F.2d 722, 726 n.11 (9th Cir. 1989) ("The
invalidity of the underlying order is always a
defense to a civil contempt charge.").  The record
demonstrates that Luxembourg banking law normally
compels both the release of depositors' funds on
demand and strict secrecy regarding bank accounts.
At the very least, those banking laws meant that
BIL was subjected to conflicting legal demands,

> but that would assume that the TRO had some force
> in Luxembourg. In fact, however, the TRO had no
> effect in Luxembourg because it was never
> registered there.

Id. at 1392. The international concerns in Reebok do not exist in the instant case, which involves the circumstances where the Waffenschmidt analysis is "sound, even necessary." See id. This Court therefore concludes that the Homa analysis is appropriate in the instant case

### a. Count VII

Count VII alleges violations of the Permanent Injunction and effectively seeks contempt sanctions. Homa requires a **knowing** violation of an injunction to support the exercise of personal jurisdiction over a defendant in spite of the defendant's lack of other contacts with the forum state. Plaintiff has alleged:

> Defendant Frank Nielsen's entering into the
> settlement agreement and consent judgment and
> injunction in Hawaii and then breaching them with
> the knowing assistance, aid, abetment and
> conspiracy of his wife Cynthia Nielsen, and on
> information and belief, Lattman's, Hermon's, and
> Whitter's awareness of that settlement agreement
> and consent judgment and injunction when they
> acted, provides personal jurisdiction over Frank
> and Cynthia Nielsen, Lattman, Hermon, Whitter and
> the personal/family businesses they owned and
> controlled: Green Planet Maps, LLC (owned by Frank
> and Cynthia Nielsen), Bear Valley Bikes
> Speed-Evolution, Inc. (owned by Derek Hermon), and
> Palm Traders LLC (owned by Vicki Whitter) . . . .

[Amended Complaint at ¶ 10, pg. 4.] This is sufficient to allege that Lattman and the Bear Valley Defendants had knowledge of the

Permanent Injunction.  Further, the Permanent Injunction was attached to both the original Complaint and the Amended Complaint as an exhibit.  [Complaint, Exh. H; Amended Complaint, Exh. H.] Count VII alleges that Lattman's and the Bear Valley Defendants' "wrongful actions constitute violations of" the Permanent Injunction.  [Amended Complaint at ¶ 79.]  Plaintiff also alleges that all of the defendants' conduct is on-going.  See id. at ¶ 57 ("Defendants have continued to infringe [Plaintiff's] copyrighted designs and[,] unless enjoined by order of this Court, will continue to infringe said copyrights[.]").[4]

In light of the foregoing, the Amended Complaint alleges a sufficient basis for this Court to exercise personal jurisdiction over Lattman and the Bear Valley Defendants – despite lack of contacts with Hawai`i – to enforce the Permanent Injunction.  To the extent that the Lattman Motion and the Bear Valley Motion seek dismissal of Count VII for lack of personal jurisdiction, the Motions are denied.

### b.    Other Claims

Plaintiff also argues that this Court's personal jurisdiction over Lattman and the Bear Valley Defendants for purposes of Count VII also allows this Court to exercise jurisdiction over them for purposes of Plaintiff's other claims.

---

[4] This Court notes that, at the hearing on the Motions, the Bear Valley Defendants' counsel acknowledged that the Bear Valley Defendants continue to sell the products at issue in this case.

Plaintiff's other counts do not seek to enforce the Permanent Injunction; they assert affirmative claims for relief. Although the other counts arise from the same set of facts as Count VII, they are independent claims and the finding of personal jurisdiction for purposes of Count VII does not automatically confer jurisdiction as to the other counts. Plaintiff has not submitted any authority to support its position that the Homa analysis applies to its affirmative claims, nor has this Court found any. The cases applying Homa are limited to the context of contempt orders. See, e.g., Clearance Commc'ns, Inc. v. Bowers, 651 F.3d 1200, 1215–16 (10th Cir. 2011) ("Because we find the Seventh Circuit's analysis in Homa persuasive, we adopt its rule and hold that a district court may properly exercise personal jurisdiction over a nonparty for purposes of entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order."); F.T.C. v. Asia Pac. Telecom, Inc., 788 F. Supp. 2d 779, 781, 789 (N.D. Ill. 2011) (applying Homa in an order declining to hold the defendants in contempt of court); S.E.C. v. Bilzerian, 613 F. Supp. 2d 66, 68, 73 (D.D.C. 2009) (applying Homa in an order holding the defendant in contempt), *decision clarified on reconsideration*, 641 F. Supp. 2d 16, *and aff'd*, 410 F. App'x 346 (D.C. Cir. 2010).

The policies behind the personal jurisdiction analysis and a court's ability to enforce its injunctions nationwide do not support an extension of the Homa analysis to Plaintiff's affirmative claims. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden, 134 S. Ct. at 1121. The Supreme Court has emphasized that "Due [P]rocess limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties." Id. at 1122. In addition, a district court must have the ability to enforce its injunctions nationwide to preserve the authority and effectiveness of its orders and because requiring another tribunal to determine whether a district court's injunction has been violated "would operate to deprive the [injunction] proceeding of half its efficiency." Homa, 514 F.3d at 674 (quoting In re Debs, 158 U.S. at 595).

Extending personal jurisdiction under the Homa analysis to Plaintiff's affirmative claims would not further the policy behind nationwide enforcement of court injunctions, even if the affirmative claims arise from the same conduct that constitutes a violation of the injunction. Extending personal jurisdiction to Plaintiff's affirmative claims would violate Lattman's and the Bear Valley Defendants' Due Process rights because there would be

29

no personal jurisdiction over them but for the violation of the Permanent Injunction. Moreover, lack of personal jurisdiction over these affirmative claims does not impair Plaintiff's ability to enforce the Permanent Injunction in this district. The <u>Homa</u> analysis therefore does not allow the exercise of personal jurisdiction over Plaintiff's affirmative claims.[5]

Because there is no basis for this Court to exercise personal jurisdiction over Lattman and the Bear Valley Defendants as to Counts I, II, III, IV, VI, and VIII, the Motions are granted insofar as those claims are dismissed.

It is arguably possible to amend its jurisdictional allegations to plead a factual basis for specific jurisdiction under the minimum contacts analysis. Dismissal must therefore be without prejudice. <u>See</u> <u>Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.</u>, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." (brackets, citation, and internal quotation marks omitted)). Plaintiff is granted leave to file a second

---

[5] This Court acknowledges that, from the perspective of judicial economy, it does not seem to make much sense to require Plaintiff to file its affirmative claims in multiple other jurisdictions, as opposed to allowing Plaintiff to pursue all of its claims arising out of the conduct which constitutes violations of the Permanent Injunction together with its attempt to enforce the injunction in this district court. However, judicial economy cannot override the defendants' Due Process rights.

amended complaint in order to address the jurisdictional defects identified in this Order.  To the extent that the Motions argue that the dismissal of Counts I to VI and Count VIII for lack of personal jurisdiction should be with prejudice, the Motions are denied.

## II.  <u>Venue</u>

### A.  <u>Dismissal for Improper Venue</u>

Pursuant to Fed. R. Civ. P. 12(b)(3), Lattman and the Bear Valley Defendants also seek dismissal based on improper venue.  In light of this Court's rulings regarding personal jurisdiction, the only remaining claim in this case is Count VII. Venue is proper in this district court as to Count VII because of this Court's authority to enforce its Permanent Injunction.  <u>See</u> 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.").  The Lattman Motion and the Bear Valley Motion are denied, to the extent that they seek dismissal of Count VII based on improper venue.

This Court has dismissed Counts I to VI and Count VIII for lack of personal jurisdiction, but has granted Plaintiff leave to file a second amended complaint to cure the jurisdictional defects.  It is therefore premature to address

whether this district court is an improper venue as to the claims
Plaintiff attempted to allege in Counts I to VI and Count VIII of
the Amended Complaint.  The Lattman Motion and the Bear Valley
Motion are denied, to the extent that they seek dismissal of
Counts I to VI and Count VIII based on improper venue.  The
denial is without prejudice insofar as Lattman and the Bear
Valley Defendants may revisit this argument, if appropriate,
after Plaintiff files its second amended complaint.

      **B.**   **Transfer of Venue**

      Lattman argues that, even if this Court concludes that
venue is proper in this district, it should transfer the case
against him to the Eastern District of California pursuant to 28
U.S.C. § 1404(a), which states: "For the convenience of parties
and witnesses, in the interest of justice, a district court may
transfer any civil action to any other district or division where
it might have been brought or to any district or division to
which all parties have consented."

      The following standard applies to a request to transfer
venue:

> [A] district court may, pursuant to § 1404(a),
> transfer any civil action to any other district or
> division where it might have been brought if it is
> in the interests of justice and convenient for the
> parties and witnesses.  See Lung v. Yachts Int'l,
> Ltd., 980 F. Supp. 1362, 1370 (D. Haw. 1997).  The
> purpose of § 1404(a) is to prevent the waste of
> time, energy, and money and to protect litigants,
> witnesses, and the public against unnecessary
> inconvenience and expense.  Id. at 1369 (citing

Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct.
805, 11 L. Ed. 2d 945 (1964)).

> A motion to transfer venue under § 1404(a)
> requires this court to weigh multiple factors to
> determine whether transfer is appropriate.  These
> factors may include: (1) the location where the
> relevant agreements were negotiated and executed,
> (2) the state that is most familiar with the
> governing law, (3) the plaintiff's choice of
> forum, (4) the respective parties' contacts with
> the forum, (5) the contacts relating to the
> plaintiff's cause of action in the chosen forum,
> (6) the differences in the costs of litigation in
> the two forums, (7) the availability of compulsory
> process to compel attendance of unwilling nonparty
> witnesses, and (8) the ease of access to sources
> of proof.  See Jones v. GNC Franchising, Inc., 211
> F.3d 495, 498-99 (9th Cir. 2000).

S.E.C. v. Lyndon, Civil No. 13-00486 SOM-KSC, 2014 WL 2711966, at

*7 (D. Hawai`i June 13, 2014).

Because Count VII is the only claim before the Court at

this time, transfer of venue would not be in the interests of

justice because of this Court's authority to enforce the

Permanent Injunction.  The Lattman Motion is therefore denied as

to Lattman's request for transfer of venue as to Count VII.

Lattman's request is denied as moot as to the other counts of the

Amended Complaint.  The denial of Lattman's request as to

Counts I to VI and Count VIII is without prejudice, insofar as

Lattman may revisit this argument, if appropriate, after

Plaintiff files its second amended complaint.

### III. **Failure to State a Claim**

Lattman also argues that Counts II, III, IV, V, and VII fail to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

Insofar as Counts II to V have been dismissed for lack of personal jurisdiction, this Court construes the Lattman Motion as arguing that the dismissal of those claims should be with prejudice because amendment would be futile.  Lattman's arguments why Counts II to V fail to state a claim mirror his jurisdictional argument – he asserts that Plaintiff cannot bring claims against him for violating Hawai`i law if he did not have any contacts with Hawai`i.  This Court rejects Plaintiff's arguments because this Court has already concluded that it is arguably possible for Plaintiff to cure the defect in his factual allegations regarding Lattman's contacts with Hawai`i.

Lattman argues that Count VII fails to state a claim because he is not bound by the Settlement Agreement and Permanent Injunction.  As previously noted, the Permanent Injunction applies to "Frank Nielsen and . . . any persons, businesses, corporations, limited liability companies, or entities acting by, through, under, in concert, or in participation with them." [Amended Complaint, Exh. H (Permanent Injunction) at 2.] Further, Plaintiff alleges:

> [F.] Nielsen and Green Planet may have helped
> create the H20 to Go Delta map after they settled

> with [Plaintiff], and if so, that wrongful
> activity was not released in the settlement –
> infringement as well as violation of the
> Injunction and settlement agreement prohibitions
> against making or distributing derivatives; making
> or distributing any products concerning the same
> location, subject matter or titles as
> [Plaintiff's] copyrighted designs; and/or using
> [Plaintiff's] software, computer or
> programs . . . .  The injunction covers those
> acting in concert or participation with Nielsen,
> which may include Lattman.

[Id. at ¶ 25 (emphasis omitted).]

Based on these allegations, read in the context of the Amended Complaint as a whole, Plaintiff has stated a plausible claim that Lattman violated the Permanent Injunction.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007))).

The Lattman Motion is denied as to Lattman's argument that Counts II, III, IV, V, and VII fail to state a claim.

## CONCLUSION

On the basis of the foregoing, pro se Defendant Gale Dean Lattman's Motion to Dismiss, filed February 19, 2017, and Defendants Derek Hermon and Bear Valley Bikes Speed-Evolution's Motion to Dismiss, filed June 9, 2017, are HEREBY GRANTED IN PART AND DENIED IN PART.  Both of the Motions are:

-GRANTED insofar as Counts I, II, III, IV, V, VI, and VIII of

Plaintiff Franko Maps, Ltd.'s Amended Complaint, [filed 11/15/16 (dkt. no. 12),] are DISMISSED;

-DENIED insofar as the dismissal of those claims is WITHOUT PREJUDICE;

-DENIED as to their requests to dismiss Count VII of the Amended Complaint; and

-DENIED as to their requests for dismissal based on improper venue.

Further, the Lattman Motion is DENIED as to his request to transfer venue and his request to dismiss Counts II, III, IV, V, and VII for failure to state a claim.

Plaintiff is GRANTED leave to file a second amended complaint by **December 14, 2017**. Plaintiff is only granted leave to amend its jurisdictional allegations. Plaintiff does not have leave to add any new parties, claims, or theories of liability. If Plaintiff wishes to make such amendments, it must file a motion for leave to amend, pursuant to Fed. R. Civ. P. 15(a)(2). This Court also GRANTS Plaintiff leave to conduct jurisdictional discovery prior to **December 14, 2017**. If Plaintiff does not file a second amended complaint by **December 14, 2017**, its case against Lattman and the Bear Valley Defendants will proceed on Count VII only.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 29, 2017.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**FRANKO MAPS LTD. VS. FRANK NIELSEN, ET AL; CIVIL 16-00600 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**