UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| FRANKO MAPS, LTD., | CIV. NO. 16-00600 LEK-RLP |
| Plaintiff, | |
| vs. | |
| FRANK NIELSEN, CYNTHIA NIELSEN, GREEN PLANET MAPS, LLC, GALE DEAN LATTMAN doing business as H2O TO GO MAPS, DEREK T HERMON, BEAR VALLEY BIKES SPEED-EVOLUTION, INC., PALM TRADERS LLC, VICKI WHITTER, | |
| Defendants. | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Plaintiff Franko Maps Ltd. ("Plaintiff") filed this action on November 7, 2016. Plaintiff filed its Amended Complaint on November 15, 2016. [Dkt. no. 12.] Plaintiff's claims against Defendants Palm Traders LLC ("Palm Traders") and Vicki Whitter ("Whitter" and collectively "Palm Traders Defendants") were dismissed without prejudice. [Order, filed 1/7/19 (dkt. no. 129).] Plaintiff settled its claims against Defendant Gale Dean Lattman ("Lattman") and Defendants Frank Nielsen ("F. Nielsen"), Cynthia Nielsen ("C. Nielsen"), and Green Planet Maps, LLC ("Green Planet").[1] [Consent judgment

---

[1] F. Nielsen, C. Nielsen, and Green Planet will be referred to collectively as "the Nielsen Defendants."

& permanent injunction (as to Lattman), filed 12/27/18 (dkt.
no. 113); Consent judgment & permanent injunction (as to
the Nielsen Defendants) ("Nielsen Consent Judgment"), filed
12/27/18 (dkt. no. 114).[2]]  Thus, the only remaining claim is
Plaintiff's claim against Defendant Bear Valley Bikes Speed-
Evolution, Inc. ("Bear Valley") and pro se Defendant Derek T.
Hermon ("Hermon" and collectively "Bear Valley Defendants") for
violation of the consent judgment and permanent injunction,
filed on March 18, 2014, in <u>Franko Maps Ltd., et al. v. Trident
Diving Equipment, et al.</u>, CV 13-00637 LEK-KSC ("2014 Consent
Judgment" and "Count VII").[3]

The Amended Complaint also included a claim against
the Bear Valley Defendants asserting false advertising and
misrepresentation, pursuant to the Lanham Act and common law, as
well as defamation ("Count VIII").  However, that claim was
dismissed without prejudice for lack of personal jurisdiction.
[Order Granting in Part and Denying in Part Motions to Dismiss,

---

[2] F. Nielsen asserted a counterclaim against Plaintiff, but
it was dismissed with prejudice in the Nielsen Consent Judgment.
[Def. Frank Nielsen's Counterclaim Against Pltf. Franko Maps
Ltd., filed 4/6/17 (dkt. no. 24-1); Nielsen Consent Judgment at
25.]

[3] F. Nielsen and Green Planet were among the parties to the
2014 Consent Judgment.  Neither of the Bear Valley Defendants
was a party to the 2014 Consent Judgment.  [Amended Complaint,
Exh. H (2014 Consent Judgment) at 2.]

filed 9/29/17 (dkt. no. 60) ("9/29/17 Order"), at 30-31.[4]] In
the 9/29/17 Order, this Court concluded that there was a basis
to assert personal jurisdiction over the Bear Valley Defendants
– in spite of their lack of contacts with Hawai`i – to enforce
the 2014 Consent Judgment as to the Bear Valley Defendants'
allegedly **intentional** violations.  2017 WL 4381669, at *11
(citing <u>S.E.C. v. Homa</u>, 514 F.3d 661 (7th Cir. 2008)).  Because
this analysis only applied to Count VII, Count VIII was
dismissed without prejudice.  <u>Id.</u> at *11-12.  Only Count VII is
before this Court because Plaintiff did not attempt to cure the
jurisdictional defect as to Count VIII by filing a second
amended complaint.

On January 4, 2019, default was entered against Bear
Valley because it failed to have counsel appear at a show cause
hearing, and because corporate entities are required to be
represented by counsel.  <u>See</u> Order Directing Entry of Default
Against Bear Valley Bikes Speed-Evolution, Inc., dkt. no. 126;
<u>see also</u> Local Rule LR83.11 ("Business entities, including but
not limited to corporations, . . . cannot appear before this
court *pro se* and must be represented by an attorney.").[5]

---

[4] The 9/29/17 Order is also available at 2017 WL 4381669.

[5] The Bear Valley Defendants' counsel was granted leave to
withdraw in an order filed on December 17, 2018.  [Dkt.
no. 107.]  Since that time, no counsel has appeared on behalf of
(. . . continued)

On January 17, 2019, Plaintiff was granted default judgment against the Bear Valley Defendants.  [EO: Court Order Granting Pltf.'s Motion in Limine #4 for Default Judgment Against Derek T. Hermon and Bear Valley Bikes Speed-Evolution, Inc., for Failure to Comply with Deadlines Set by the Court ("Default Judgment EO"), dkt. no. 141.[6]]

## PRELIMINARY MATTERS

The default judgment "conclusively establishes the liability of" the Bear Valley Defendants.  See Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (citing Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)).[7]  The default judgment has not been set aside.  See generally Fed. R. Civ. P. 55(c) (stating a "court may set aside an entry of default for good cause").  Thus, the only issue remaining before this Court is the amount of the damages

---

either Hermon or Bear Valley.  Hermon is proceeding pro se, and Bear Valley has been unable to appear in these proceedings since counsel's withdrawal.

[6] Plaintiff's Motion in Limine #4 for Default Judgment Against Derek T. Hermon and Bear Valley Bikes Speed-Evolution, Inc., for Failure to Comply with Deadlines Set by the Court, [filed 1/2/19 (dkt. no. 122),] was construed as a motion for sanctions ("Sanctions Motion").  [Default Judgment EO at 1.]

[7] In Geddes, the Ninth Circuit stated: "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  559 F.2d at 560 (some citations omitted) (citing Pope v. United States, 323 U.S. 1, 12, 65 S. Ct. 16, 89 L. Ed. 3 (1944)).

award against the Bear Valley Defendants.  To the extent

Hermon's Defense to Claims of Damages ("Hermon Damages Filing"),

[filed 2/11/19 (dkt. no. 143),] attempts to contest his

liability as to Count VII, those arguments will not be

considered.

Plaintiff argues this Court should not consider the

arguments in paragraphs 1 through 12 of the Hermon Damages

Filing because the arguments: 1) are beyond the scope of the

briefing allowed by this Court; 2) rely on materials that he

failed to file in a form that would be admissible; and 3) rely

on documents that were not produced in discovery, even though

those documents were responsive to Plaintiff's discovery

requests.  As to the first argument, the minutes of the hearing

on the Sanctions Motion state: "Plaintiff's damages are

addressed in its Proposed Findings of Fact and Conclusions of

Law and its trial submissions.  Plaintiff's supplement regarding

additional damages is due 1/30/2019.  Defendant Derek T.

Hermon's Objections to **damages only** are due 2/13/2019.

Plaintiff's Reply is due 2/20/2019."  [Minutes, filed 1/16/19

(dkt. no. 140) at 1 (emphasis in original).]  A fair reading of

the Court's minutes is that Hermon was permitted to submit

materials objecting to **all** of Plaintiff's claimed damages, not

only Plaintiff's supplement addressing its attorneys' fees and

costs.  This is particularly so in light of the fact that,

although default judgment has been granted, Plaintiff still has the burden of proof as to the amount of its damages. <u>See</u> <u>Geddes</u>, 559 F.2d at 560; <u>see also</u> <u>Mancuso v. Tauber</u>, Case No. CV 12-10360 FMO(JCx), 2016 WL 7647658, at *7 (C.D. Cal. May 31, 2016) ("A plaintiff seeking default judgment is 'required to prove all damages sought in the complaint.'" (citing <u>Philip Morris USA, Inc. v. Castworld Products, Inc.</u>, 219 F.R.D. 494, 498 (C.D. Cal. 2003))). This Court therefore rejects Plaintiff's argument that the Hermon Damages Filing exceeds the scope of the briefing permitted by this Court.

As to Plaintiff's second argument, the Hermon Damages Filing relies on various supporting material that is not attached to the Hermon Damages Filing in the form of exhibits.[8] Because Hermon is proceeding pro se, this Court must liberally construe his filings. <u>See</u> <u>Blaisdell v. Frappiea</u>, 729 F.3d 1237, 1241 (9th Cir. 2013) ("Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants . . . " (citations omitted)). Further, a pro se party is "h[e]ld to less stringent standards than" the standards

---

[8] The Hermon Damages Filing is primarily a twenty-four-page document which consists of: numbered paragraphs that are statements or argument by Hermon; and supporting materials that are copied between paragraphs. Citations to the Hermon Damages Filing with paragraph numbers refer to Hermon's statements, and citations without paragraph numbers refer to Hermon's supporting material.

applicable to attorneys. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Plaintiff's objection is not persuasive because, with four exceptions, Plaintiff's supporting documents were submitted in the same manner as Hermon's – *i.e.*, relevant excerpts of documents were copied into Plaintiff's filings, rather than attaching the documents as exhibits. See, e.g., Pltf.'s submission of direct trial testimony, Decl. of Peter Cannon ("P. Cannon Decl."), filed 1/8/19 (dkt. no. 134), at pgs. 23-24;[9] Pltf.'s proposed Findings of Fact and Conclusions of Law ("Pltf.'s Proposed FOF/COL"), filed 1/8/19 (dkt. no. 135), at 21-22. Moreover, some of the materials copied into the Hermon Damages Filing are also copied into Plaintiff's Proposed FOF/COL. Compare Hermon Damages Filing at 12-13, with Pltf.'s Proposed FOF/COL at 21-22 & 23-24. This Court therefore rejects Plaintiff's argument that Hermon's supporting materials should not be considered because Hermon did not submit them in admissible form.

Plaintiff also contends this Court should not consider the documents copied on pages 2, 4, 7, 9, 11, and 16 through 22 of the Hermon Damages Filing because Hermon did not produce them in discovery. The documents copied on pages 2 and 4 are not

---

[9] Peter Cannon is Plaintiff's chief executive officer. [P. Cannon Decl. at ¶ 1.]

being considered because they improperly contest Hermon's liability; the first email copied on page 7 is not being considered because Hermon did not submit the attachments that were purportedly transmitted in that email; and the documents copied on pages 16 through 22 are not being considered because they are not relevant to this Court's analysis. Plaintiff's objection to those documents are therefore denied as moot.

The second email on page 7 is to the Bear Valley Defendants' former counsel, transmitting a table of the sales of and profits from the Bear Valley Map, and page 9 is the table itself. See Hermon Damages Filing at 5, ¶ 4. The document on page 11 is an invoice showing the price that Hermon paid for the bicycle he traded to F. Nielsen in exchange for F. Nielsen's work on the Bear Valley Map. See id. at 10, ¶ 5. Although Hermon did not produce those documents in response to Plaintiff's written discovery requests, this Court will consider them because of the unusual circumstances of this case. The Bear Valley Defendants' counsel moved to withdraw on December 3, 2018, and the magistrate judge granted the motion on December 17, 2018. [Dkt. nos. 98, 107.] The withdrawal was approximately a month before the scheduled trial date. See Amended Rule 16 Scheduling Order, filed 10/3/18 (dkt. no. 97), at ¶ 1 (stating the nonjury trial was to commence on 1/22/19). To the extent Plaintiff argues it would be unfairly prejudiced

by the Court's consideration of materials not produced in discovery, the Court notes that neither Plaintiff nor any other party in this case took depositions.  <u>See</u> Pltf.'s Statement that It Designates No Deposition Transcripts Because No Depositions Were Taken in this Case, filed 1/2/19 (dkt. no. 116).  Plaintiff did not file a motion to compel the Bear Valley Defendants to respond to discovery requests, nor is there any indication in the record that Plaintiff utilized the Expedited Discovery Assistance process provided in Local Rule 37.1(c).  Further, Plaintiff knew, by May 2017, the identity of three vendors who sold the Bear Valley Map.  <u>See</u> <i>infra</i> Finding of Fact No. 9. There is no evidence in the record of Plaintiff's attempts to obtain information from those vendors about how many Bear Valley Maps they purchased, when, and for what price.  Therefore, Plaintiff's objection is denied, and this Court will consider the materials copied on the second part of page 7 and pages 9 and 11 of the Hermon Damages Filing.

The Court, having considered the entry of default judgment and the relevant filings in this case, makes the following Findings of Fact and Conclusions of Law.  Any finding of fact that should more properly be deemed a conclusion of law and any conclusion of law that should more properly be deemed a finding of fact shall be so construed.

## FINDINGS OF FACT

1.    Hermon is the owner of Bear Valley.  [Amended Complaint at ¶ 10.]

2.    The Nielsen Defendants have admitted that they infringed upon valid and enforceable copyrights owned by Plaintiff, and these infringements also constituted violations of the 2014 Consent Judgment.  [Nielsen Consent Judgment at ¶ 2.]

3.    Plaintiff's copyrights addressed in the Nielsen Consent Judgment include trail maps of the Big Bear area in California.  Id. at 6, ¶ 5; see also Amended Complaint, Exh. O (excerpts of Plaintiff's Big Bear map and the map's copyright information from the United States Copyright Office).

4.    Hermon knew about Plaintiff's copyright to Plaintiff's Big Bear map, and Hermon knew, by sometime in 2012, that F. Nielson's employment with Plaintiff had been terminated. Hermon purchased Plaintiff's Big Bear map every year from 2005 until F. Nielsen's termination.  [Amended Complaint at ¶¶ 32-33.]

5.    In 2015, F. Nielsen created "The Definitive Big Bear Trail Map" for the Bear Valley Defendants ("Bear Valley Map"). [Amended Complaint at ¶ 34 & Exh. Q (excerpts of Bear Valley Map).]

6.  Hermon asserted he owned the copyrights to the Bear Valley Map by placing "© 2015 Derek Hermon" on the Bear Valley Map.  [Amended Complaint at ¶ 34.]  This representation was false.

7.  The Bear Valley Defendants willfully "creat[ed], display[ed], offer[ed] and/or s[old]" the Bear Valley Map.  [Id. at ¶ 35.]

8.  At the latest, the Bear Valley Defendants had a copy of the 2014 Consent Judgment in November 2016 because it is an exhibit to the Amended Complaint.  See P. Cannon Decl. at ¶ 20; Stipulation for Waiver of Service of Summons and for Extension of Time to Respond to Amended Complaint, filed 3/17/17 (dkt. no. 23) (stating the Bear Valley Defendants received the Amended Complaint by mail in November 2016).

9.  The Bear Valley Defendants continued to distribute and/or sell the Bear Valley May through at least May 4, 2017. See Pltf.'s submission of direct trial testimony, Decl. of Wilson P. Cannon, III ("W. Cannon Decl.") at ¶¶ 2-6 (stating that, on 5/4/17, he purchased the Bear Valley Map from four locations in the Big Bear area: Goldsmith's, Bear Valley Bikes, the Visitor Center, and Lakeview Market).[10]

[10] Wilson Cannon is Peter Cannon's son.  [W. Cannon Decl. at ¶ 2.]  The W. Cannon Declaration is dated July 23, 2017.  [Id. at pg. 3]  It was originally filed on July 24, 2017 in support
(. . . continued)

10.   The Bear Valley Defendants continued to display and/or advertise the Bear Valley Map through various Internet-based platforms, at least through January 7, 2019.  [P. Cannon Decl. at ¶ 38.]  Plaintiff, however, has presented no evidence of the damages it has suffered as a result of the online displays and/or advertisement.

11.   Hermon states he no longer sells nor distributes the Bear Valley Map.  [Hermon Damages Filing at 4, ¶ 3.]  However, he has three copies of the laminated version of the Bear Valley Map, and he asks that he be allowed to retain those copies "for personal use and records."  [Id. at 23, ¶ 12.]

A.   **Amount of Damages**

### Plaintiff's Position

12.   Plaintiff asserts it has suffered significant damages as a result of the Bear Valley Defendants' wrongful actions. Plaintiff's damages include: lost profits, because the sales of the Bear Valley Map decreased the sales of Plaintiff's Big Bear map; and "loss of goodwill, trust and reputation in the relevant business community."  [Amended Complaint at ¶ 39.]

---

of Plaintiff's memorandum in opposition to the Bear Valley
Defendants' motion to dismiss, filed on June 9, 2017.  See dkt.
nos. 44 (motion to dismiss), 49 (mem. in opp.).  The Bear Valley
Defendants' motion to dismiss was one of two motions granted in
part and denied in part in the 9/29/17 Order.  2017 WL 4381669,
at *14.

13.  Plaintiff argues the following measures of damages would approximate Plaintiff's lost profits, prevent unjust enrichment to the Bear Valley Defendants, and deter them from future violations: disgorgement of the Bear Valley Defendants' marginal profits; [P. Cannon Decl. at ¶¶ 40;] and the statutory damages that would be available for copyright infringement, [id. at ¶ 42].[11]

14.  Neither F. Nielsen nor the Bear Valley Defendants produced discovery reflecting the number of Bear Valley Maps that were printed.  Further, they did not produce discovery showing how many Bear Valley Maps were sold.  [P. Cannon Decl. at ¶ 40.]

15.  P. Cannon estimates the Bear Valley Defendants obtained 10,000 copies of the Bear Valley Map in 2016, based on F. Nielsen's statements that: a) in late 2016, he asked Hermon for $10,000 as compensation for his work on the Bear Valley Map; and b) his desired compensation rate was one dollar per map. [Id. (citing Trial Exhibits 12 and 28).]

---

[11] Plaintiff notes that, statutory damages for intentional copyright infringement can be up to $150,000.  [P. Cannon Decl. at ¶ 42 (citing 17 U.S.C. § 504).]  Half of that amount ($75,000) "is close to (but somewhat more conservative than)" the proposed disgorgement of marginal profit measure of damages. [Id.]

16.  Plaintiff's position appears to be that the Bear
Valley Defendants ordered approximately 3,000 copies of the Bear
Valley Map from F. Nielsen in 2015, and another 10,000 copies in
2016.  See Pltf.'s Proposed FOF/COL at 9, ¶ 10; id. at 24, ¶ 28.

17.  Because Hermon has previously stated he has no copies
of the Bear Valley Map to turn over, Plaintiff argues this Court
should assume the Bear Valley Defendants sold all 10,000 copies
of the Bear Valley Map.  [P. Cannon Decl. at ¶ 41.]  However,
Plaintiff provides no citation for this statement by Hermon.

18.  There is no evidence that Hermon paid F. Nielsen the
$10,000.  Further, Plaintiff argues that, even if the Bear
Valley Defendants did pay F. Nielsen, deducting the amount would
allow F. Nielsen and the Bear Valley Defendants to retain
benefits from their wrongdoing.  [Id. at ¶ 40.]

19.  A reasonable cost for the printing of a map is one
dollar per map.  [Id.]

20.  The Bear Valley Map was sold for approximately ten
dollars.  [W. Cannon Decl., Exh. 1 (receipt reflecting $9.99
price), Exh. 2 (receipt reflecting $10 price), Exh. 3 (receipt
reflecting $10 price) at 1, Exh. 4 (receipt reflecting $9.99
price).]

21.  Plaintiff's position is that the Bear Valley
Defendants had marginal profits of $90,000 from the sale of the

Bear Valley Map, *i.e.* (10,000 maps at $10 each) minus (10,000 at $1 each for printing costs).  [P. Cannon Decl. at ¶ 40.]

<u>**Hermon's Position**</u>

22.  Hermon argues the amount of damages available in a claim for copyright infringement is not an appropriate measure of damages in this case because Count VIII was dismissed in the 9/29/17 Order.  [Hermon Damages Filing at 1, ¶ 1.]

23.  As to the number of Bear Valley Maps that were produced, Hermon presents an invoice, dated March 26, 2015, to Hermon from Green Planet, for 3,100 copies of the Bear Valley Map ("3/26/15 Invoice").  [<u>Id.</u> at 5, ¶ 4; <u>id.</u> at 8 (3/26/15 Invoice).]

24.  Hermon also presents a list that he prepared of the estimated number of Bear Valley Maps sold, or given away, between 2015 and 2017 ("Estimated Distribution List").  [Hermon Damages Filing at 5, ¶ 4; <u>id.</u> at 7 (email transmitting the list to the Bear Valley Defendants' former counsel); <u>id.</u> at 8 (Estimated Distribution List).]

25.  The Estimated Distribution List includes the price received per map in each sale, as well as the $2,900 reflected on the 3/26/15 Invoice, and a $1,254 "distribution fee." [Hermon Damages Filing at 8.]

26.  According to the Estimated Distribution List, only the 222 copies sold at the Bear Valley Bikes store, and single

15

copies sold to two individuals, were sold for ten dollars each. The other sales were for either five dollars each or $5.75 each. [Id.] Each of the vendors named in the W. Cannon Declaration is among those identified on the Estimated Distribution List.

27. According to the Estimated Distribution List, 1,619 copies of the Bear Valley Map were given away, but 1,522 of those were given away through the Bear Valley Bikes store. [Id.]

28. According to the Estimated Distribution List, the Bear Valley Map had a net loss of $687.25. [Id.]

29. Hermon states he traded a bicycle to F. Nielsen for F. Nielsen's work on the Bear Valley Map. The bicycle had a manufacturer's suggested retail price of $2,900, and Hermon bought the bicycle from Specialized Bicycle Components, Inc. ("Specialized") for $1,537.60. [Id. at 10, ¶ 5; id. at 11 (Specialized invoice dated 8/29/15).]

30. As further support for his position that there were only 3,100 copies of the Bear Valley Map made, Hermon attaches the emails that Plaintiff relies upon for its position that there were 10,000 copies made. [Hermon Damages Filing at 10, ¶ 6; id. at 12 (Tr. Exh. 12); id. at 13 (Tr. Exh. 28).]

31. What would have been Trial Exhibit 12 is an email, dated May 21, 2014, from F. Nielsen to Hermon. It states, in relevant part:

If you want to expand the coverage or scope of the map beyond the current map boundaries, it can only be done with LOTS of expensive labor. Sorry! But I'd willingly do is [sic] **for maybe a trade for your Porsche**??

Printing costs are something on the order of $0.90 apiece in the quantity range of 3,000, but jump to $1.25 or more for 2,000 or less. **3,000 is a good minimum order.** Remember, that is just the printing and delivery cost, with my labor free, so far. What do I want out of this work? Well . . . . I usually try to make about $1 per map to cover my expense and time. I will never catch up with the time I've put into this, so I will just tell you that **what I am really looking for is a decent mountain bike, even if it is used** – a size L or XL . . . .

FYI, typically, a distributor buying a whole print run would pay one-half of wholesale, which means they pay $1.75 apiece for 3,000, which is $5,250 plus shipping.

If you could get a sponsor, like Specialized and Ellsworth, to pay for the printing for a map which you can give away, you could print 10,000 or more at just $0.65 apiece, or less. Again, that is just the printing cost. I still want a bike!

[Hermon Damages Filing at 12 (bold emphases Hermon's).]

32. What would have been Trial Exhibit 28 is an email, dated July 18, 2016, from F. Nielsen to Hermon. F. Nielsen asks, "[w]ould you like to trade for bike stuff again?" [Id. at 13.] F. Nielsen proposes different bicycle parts and states: "So, there are some ideas to talk about. Otherwise, $10,000 payment would be fine!" [Id.] F. Nielsen starts the email, "[h]i Hermonator, my heartachey friend," and he signs it

"FRANKO, professional mountain biker (HA!)." [Id. (emphasis in original).]

33. Hermon contends F. Nielsen's statements that he would trade his services for Hermon's Porsche and that he would accept a $10,000 payment were "obviously jovial remarks." [Id. at 10, ¶ 6.]

34. Hermon admits that copies of the Bear Valley Map were sold or given away after the Bear Valley Defendants were served with the Amended Complaint (which included the 2014 Consent Judgment) on November 30, 2016. Specifically, on December 3, 2016, seventy-five copies were sold to local businesses for five dollars per map, and fifty were sold for $5.75 per map. [Id. at 21, ¶ 10.] After that date, the Bear Valley Bikes store sold twenty-two maps at ten dollars per map, and it distributed approximately 150 maps for free. [Id.]

## Court's Rulings

35. Looking at the record as a whole, Plaintiff and Hermon agree that approximately one dollar per map was a reasonable cost for the printing of the Bear Valley Map. The number of copies printed is disputed.

36. Plaintiff's evidence in support of its position that the Bear Valley Defendants ordered 10,000 copies of the Bear Valley Map from F. Nielsen in 2016 is Peter Cannon's interpretation of what would have been Trial Exhibit 28, in

which F. Nielsen proposes various items that could be traded as "fair payment for the map works" but concludes, "[o]therwise, $10,000 payment would be fine!" See P. Cannon Decl. at ¶ 40; Pltf.'s Proposed FOF/COL at 23-24; see also Hermon Damages Filing at 13.

37. Plaintiff's interpretation of the email is speculative. At worst, the "$10,000 payment would be fine" statement was included in jest. Even at best, the statement was an attempt to negotiate with Hermon. In either instance, there is no proof that F. Nielsen and Hermon agreed upon that amount, and therefore there is no evidence from which it can be inferred that the Bear Valley obtained 10,000 copies of the Bear Valley Map from F. Nielsen in 2016.

38. This Court finds, based on the 3/26/15 Invoice, [Hermon Damages Filing at 8,] that the Bear Valley Defendants obtained 3,100 copies of the Bear Valley Map from F. Nielsen.

39. Based on the Estimated Distribution List, [id. at 9,] the Bear Valley Defendants sold and/or distributed the 3,100 copies from 2015 through 2017.

40. The Estimated Distribution List and Hermon's statements are sufficient evidence of the number of copies of the Bear Valley Map that were sold, the date of the sales, and the price. [Id.; id. at 21, ¶ 10.]

41.   After receiving the 2014 Consent Judgment in November 2016, the Bear Valley Defendants: sold fifty copies of the Bear Valley Map to the Lakeview Market at five dollars each; sold twenty-five copies to Our Town Liquor at $5.75 each; sold twenty-five copies to the Art Garden at five dollars each; sold twenty-five copies to Shell Bear Valley at $5.75 each; sold twenty-two copies at the Bear Valley Bikes store for ten dollars each; and distributed approximately 150 copies through the Bear Valley Bikes store at no charge.

42.   Because Hermon does not explain why 150 copies of the Bear Valley Map were distributed by the Bear Valley Bikes store at no charge during the same period that Bear Valley Bikes sold twenty-two copies of the map for ten dollars each, this Court will treat the 150 copies as if they had been sold by the Bear Valley Bikes store for ten dollars each.

43.   The Bear Valley Defendants received the following from the sales of the Bear Valley Map after they were served with the 2014 Consent Judgment:

```
75 copies      x   $5.00 each     =   $   375.00
50 copies      x   $5.75 each     =   $   287.50
172 copies     x   $10.00 each    =   $1,720.00
                                 Total   $2,382.50
```

44.   F. Nielsen charged the Bear Valley Defendants $2,900.00 for the 3,100 copies, which is approximately one

dollar per map, but he accepted a bicycle in trade as payment.
[Hermon Damages Filing at 10, ¶ 5.]

45.   The Estimated Distribution List and Hermon's
statements are not sufficient evidence of the purported
$1,254.00 "distribution fee" Hermon asserts was paid to sell the
Bear Valley Map, [id. at 9; id. at 13, ¶ 7,] because Hermon did
not provide information about who the Bear Valley Defendants
paid the distribution fee to or the purpose of the fee.   This
Court therefore will not consider the distribution fee in
determining the amount of Plaintiff's damages.

46.   There is insufficient evidence in the record to
support a finding that the Bear Valley Defendants incurred any
costs associated with the Bear Valley Map, other than the one
dollar per map that F. Nielsen charged.

47.   One dollar for each of the 297 maps sold after the
Bear Valley were served with the 2014 Consent Judgment will be
deducted from the gross income from the Bear Valley Map during
the relevant period.   The Bear Valley Defendants therefore had
$2,085.50 in profits from the Bear Valley Map after they were
served with the 2014 Consent Judgment.

B.   **Attorneys' Fees and Costs**

**Plaintiff's Position**

48.   Plaintiff seeks an award of $62,320.00 in attorneys'
fees, plus $2,936.52 in general excise tax ("GET"), for a total

award of $65,256.52. [Pltf.'s Reply for Suppl. Regarding Attorneys' Fees as Additional Damages ("Pltf. AF Reply"), filed 2/20/19 (dkt. no. 144), at 10.[12]] However, the request has been adjusted, as explained *infra*.

49. The requested amount consists of the following hours, all of which was for work performed by Milton Yasunaga, Esq.:

| Year | Rate | Hours | Subtotal |
|------|------|-------|----------|
| 2016 | $395 | 17.7 | $ 6,991.50 |
| 2017 | $400 | 63.7 | $25,480.00 |
| 2018 | $405 | 30.1 | $12,190.50 |
| 2019 | $405 | 40.0 | $16,200.00 |
| | | Subtotal | $60,862.00 |
| | | 4.712% GET | $ 2,867.82 |
| | | **Grand Total** | **$63,729.82** |

See Pltf. AF Reply at 12; id., Decl. of Milton M. Yasunaga ("Yasunaga Reply Decl."), Exh. 1 (updated itemization of work performed).[13]

50. Mr. Yasunaga has been a civil litigation attorney in Hawai`i since 1981. [Pltf.'s Suppl. Regarding Attorneys' Fees as Additional Damages ("Pltf. AF Suppl."), filed 1/30/19 (dkt. no. 142), Decl. of Milton Yasunaga at ¶ 9.] Plaintiff argues the requested hourly rates for Mr. Yasunaga are reasonable in

---

[12] Plaintiff filed an errata to the Plaintiff AF Reply on February 21, 2019. [Dkt. no. 145.]

[13] The chart on page 12 of the Plaintiff AF Reply has been adjusted because it appears to have a mathematical error for the hours spent in 2019. The hours for 2019 in Finding of Fact No. 49 are consistent with Exhibit 1 to the Yasunaga Reply Declaration.

light of his experience and the attorneys' fee awards in other cases litigated by attorneys with comparable experience and skill. Plaintiff also argues the number of hours expended in this case is reasonable in light of the procedural posture of the case.

51. Plaintiff does not seek an award of costs incurred "[t]o be generous to [the Bear Valley] Defendants, and to be conservative." [Pltf. AF Suppl. at 3.]

### Hermon's Position

52. Hermon argues he should not be required to pay Plaintiff's attorneys' fees because of the "American Rule."[14] [Hermon Damages Filing at 23, ¶ 13.]

53. Hermon argues that, if attorneys' fees are awarded, the number of hours should be limited for the following reasons: a) work prior to the 9/29/17 Order should not be compensable because it related to claims that were dismissed; b) Plaintiff should only be compensated for 6% or 1/18th of Mr. Yasunaga's work prior to the dismissal of the other defendants because the majority of the works at issue in this case were produced by the

---

[14] "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2164 (2015) (citations and quotation marks omitted).

other defendants; and c) time for repetitive tasks and excessive time should not be compensated.[15]  [Id. at 23-24, ¶ 13.]

54.  Hermon does not present any argument contesting the reasonableness of Mr. Yasunaga's hourly rates.

## Court's Rulings

55.  Mr. Yasunaga's requested hourly rates are manifestly reasonable, in light of his experience.  See, e.g., Liberty Mut. Ins. Co. v. Sumo-Nan LLC, CIVIL NO. 14-00520 DKW-KSC, 2017 WL 810277, at *10 & n.10 (D. Hawai`i Mar. 1, 2017) (finding the requested $400 hourly rate to be reasonable for Margery Bronster, Esq., who was admitted to the New York bar in 1983 and the Hawai`i bar in 1988).

56.  Plaintiff has sufficiently reduced the hours in the request to eliminate time attributable to work performed regarding Plaintiff's claims against other defendants.  This Court therefore rejects Hermon's argument that Mr. Yasunaga's hours should be reduced to six percent or 1/18th of the total.

57.  Until the 9/29/17 Order, there were two claims pending against the Bear Valley Defendants.  The 9/29/17 Order dismissed Count VIII for lack of personal jurisdiction.  Because Plaintiff's efforts until September 29, 2017 were only partially

---

[15] Hermon raised another argument, but Plaintiff agreed to remove the 0.50 hour challenged in that argument.  [Pltf. AF Reply at 10.]

successful, a reduction in hours is warranted.  A percentage reduction will be applied because specific hours related only to Count VIII cannot be identified.  See Yonemoto v. McDonald, CIVIL NO. 11-00533 JMS-RLP, 2016 WL 7131847, at *5 (D. Hawai`i Feb. 19, 2016) ("Where a plaintiff achieves only partial success, '[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" (alteration in Yonemoto) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436–37 (1983))), report and recommendation adopted, 2016 WL 2944650 (May 20, 2016), aff'd sub nom., Yonemoto v. Shulkin, 725 F. App'x 482 (9th Cir. 2018).

58.  Mr. Yasunaga's hours prior to September 29, 2017 will therefore be reduced by twenty-five percent.

59.  This Court also rejects Hermon's argument that Mr. Yasunaga's hours should be reduced because of unnecessarily repetitive tasks and excessive time spent on tasks.  None of the time reflected in Plaintiff's request is excessive, nor is any of the work unnecessarily repetitive.

60.  This Court therefore finds the following to represent the reasonable attorneys' fees for work performed by Mr. Yasunaga in this case:

| Year | Rate | Hours | Subtotal |
|---|---|---|---|
| 2016 | $395 | 13.3 | $ 5,253.50 |
| 2017 | $400 | 51.5 | $20,600.00 |
| 2018 | $405 | 30.1 | $12,190.50 |
| 2019 | $405 | 40.0 | $16,200.00 |
| | | Subtotal | $54,244.00 |
| | | 4.712% GET | $ 2,555.98 |
| | | **Grand Total** | **$56,799.98** |

The fees in this chart reflect Mr. Yasunaga's reasonable hourly rates and the hours reasonably expended in this case.

## CONCLUSIONS OF LAW

1.    This Court has the inherent authority to enforce compliance with the 2014 Consent Judgment through civil contempt proceedings.  See Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827-28 (1994).

2.    "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence, not merely a preponderance of the evidence."  Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y ("Cetacean Research"), 774 F.3d 935, 945 (9th Cir. 2014) (citation and internal quotation marks omitted).

3.    Plaintiff has established, by clear and convincing evidence, that: a) the Bear Valley Map infringes upon Plaintiff's Big Bear trail map; and b) by ordering the making of the Bear Valley Map, and displaying, distributing, offering for sale, and selling the Bear Valley Map, the Bear Valley Defendants violated of the 2014 Consent Judgment.

4.     This Court only has personal jurisdiction over the Bear Valley Defendants to the extent they committed **intentional** violations the 2014 Consent Judgment, and they could not have intentionally violated the 2014 Consent Judgment until they had notice of it.  See 9/29/17 Order, 2017 WL 4381669, at *9-11.

5.     At the latest, the Bear Valley Defendants had notice of the 2014 Consent Judgment when they were served with the Amended Complaint in November 2016.  See *supra* Finding of Fact No. 8.  Plaintiff has not presented clear and convincing evidence showing that the Bear Valley Defendants had notice of the 2014 Consent Judgment before they were served with the Amended Complaint.  The Bear Valley Defendants therefore are not charged with knowledge of the 2014 Consent Judgment until November 2016.

6.     In this action, Plaintiff can only recover damages for the Bear Valley Defendants' actions relating to the Bear Valley Map after service of the Amended Complaint ("Relevant Actions").

7.     The appropriate measure of Plaintiff's damages are: disgorgement of the Bear Valley Defendants' profits from the sales of the Bear Valley Map after they had notice of the 2014 Consent Judgment; plus the attorneys' fees that Plaintiff reasonably incurred in these contempt proceedings.  See Cetacean Research, 774 F.3d at 958 (attorneys' fees); Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co., 281 F. Supp. 3d 967, 990-91

(C.D. Cal. 2017) (disgorgement of profits).  This Court need not reach Plaintiff's argument that the amount of damages which would have been available in a copyright claim is an appropriate measure of Plaintiff's damages because Plaintiff has presented that argument as an alternative argument to justify the amount of damages Plaintiff seeks based on disgorgement of profits.  See, e.g., P. Cannon Decl. at ¶ 42.

8.   This Court has imputed profits from the copies of the Bear Valley Map that the Bear Valley Bikes store distributed without charge after the Bear Valley Defendants received the 2014 Consent Judgment.  See supra Finding of Fact No. 42.  Those amounts are sufficient to represent Plaintiff's damages from the Bear Valley Defendants' other uses of the Bear Valley Map, such as displaying it on Bear Valley's website.

9.   Hermon's profits from the Relevant Actions were $2,085.50.  See supra Finding of Fact No. 47.

10.  Because Plaintiff's attorneys' fees are part of Plaintiff's measure of damages, not an award to the prevailing party apart from its damages, this Court rejects Hermon's "American Rule" argument.  However, this Court will only include, as part of Plaintiff's damages, the attorneys' fees that were reasonably incurred in this case.

11.  The determination of the amount of reasonable attorneys' fees is typically a two-step process:

District courts generally start by applying the
"lodestar method," i.e., multiplying "the number
of hours the prevailing party reasonably expended
on the litigation by a reasonable hourly rate."
Gonzalez v. City of Maywood, 729 F.3d 1196, 1202
(9th Cir. 2013) (quoting Ballen v. City of
Redmond, 466 F.3d 736, 746 (9th Cir. 2006)).  The
district court "may then adjust [the lodestar]
upward or downward based on" twelve factors
identified in Hensley.  Id. (quoting Moreno v.
City of Sacramento, 534 F.3d 1106, 1111 (9th
Cir.2008)); see Hensley, 461 U.S. at 430 n.3, 103
S. Ct. 1933.

Klein v. City of Laguna Beach, 810 F.3d 693, 698 (9th Cir. 2016)

(alteration in Klein).

12.  The lodestar in this case is $56,799.98.  See supra

Finding of Fact No. 60.

13.  The factors identified in Hensley are:

(1) the time and labor required; (2) the novelty
and difficulty of the questions; (3) the skill
requisite to perform the legal service properly;
(4) the preclusion of employment by the attorney
due to acceptance of the case; (5) the customary
fee; (6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the
circumstances; (8) the amount involved and the
results obtained; (9) the experience, reputation,
and ability of the attorneys; (10) the
"undesirability" of the case; (11) the nature and
length of the professional relationship with the
client; and (12) awards in similar cases.

461 U.S. at 430 n.3.[16]  "[T]he most critical factor is the degree

of success obtained."  Id. at 436.

---

[16] Hensley has been superseded in part on other grounds by
the Prison Litigation Reform Act.  See, e.g., Whitehead v.
Colvin, Case No. C15-5143RSM, 2016 WL 1464469, at *2 & n.1 (W.D.
(. . . continued)

14.    Because Plaintiff's attorneys' fees are being awarded

as an element of Plaintiff's damages, this Court concludes that

the Hensley analysis regarding an upward or downward adjustment

of the lodestar amount does not apply.   Further, even if this

Court were to consider the Hensley factors, this Court would

conclude that the factors do not warrant either an upward

adjustment or a downward adjustment.

15.    This Court therefore concludes that Plaintiff's

damages for the Relevant Actions are as follows: $2,085.50,

reflecting disgorgement of profits; and $56,799.98, reflecting

the attorneys' fees that Plaintiff reasonably incurred to

prosecute Count VII.   The total damages award is $58,885.48.

**ORDER REGARDING FINDINGS OF FACT AND CONCLUSIONS OF LAW**

AND NOW, based on the entry of default judgment

against the Bear Valley Defendants, and in accordance with the

foregoing Findings of Fact and Conclusions of Law, it is HEREBY

ORDERED that:

1.    The Bear Valley Defendants violated the 2014 Consent

Judgment by, *inter alia*: creating the Bear Valley Map with the

help of F. Nielsen; and distributing, offering for sale,

selling, displaying, and advertising the Bear Valley Map.

---

Wash. Apr. 14, 2016).   Hensley has also been abrogated on other
grounds by Texas State Teachers Ass'n v. Garland Independent
School District, 489 U.S. 782 (1989).

2.    The Bear Valley Defendants intentionally violated the 2014 Consent Judgment by distributing, offering for sale, selling, displaying, and advertising the Bear Valley Map after they had notice of the 2014 Consent Judgment through service of the Amended Complaint in November 2016.

3.    Judgment in favor of Plaintiff and against the Bear Valley Defendants shall be entered as to Count VII.

4.    Plaintiff is AWARDED $58,885.48 in damages against the Bear Valley Defendants for Count VII.

5.    The Bear Valley Defendants are ORDERED to immediately comply with the 2014 Consent Judgment.  This includes, but is not limited to: a) immediately ceasing sales and distribution of the Bear Valley Map and any other map that the Bear Valley Defendants created with F. Nielsen's help after F. Nielsen entered into the 2014 Consent Judgment ("Infringing Maps"); b) returning to Plaintiff the three copies of the Bear Valley Map still in Hermon's possession, as well as all copies of any other Infringing Maps in the Bear Valley Defendants' possession; and c) using reasonable efforts to remove all displays of the Infringing Maps, as well as all claims of ownership or creation of the Infringing Maps, that are under the Bear Valley Defendants' authority and control, including, but not limited to, Internet websites.

6.   The three copies of the Bear Valley Map in Hermon's possession and all copies of any other Infringing Maps in the Bear Valley Defendants' possession are to be returned to Plaintiff, through Plaintiff's counsel, within two weeks of the filing of this Order.  If the Bear Valley Defendants did not create any other Infringing Maps, or created other Infringing Maps but no longer have any copies of them, Hermon is ORDERED to file a declaration to that effect by no later than **May 20, 2019**.

7.   The Bear Valley Defendants must complete all reasonable efforts to remove all displays of the Infringing Maps, and all claims of ownership of the Infringing Maps, that are in their possession or under their authority and control by no later than **May 20, 2019**.

The Clerk's Office is DIRECTED to enter judgment immediately in favor of Plaintiff and against the Bear Valley Defendants as to Count VII.  Because there are no other remaining parties or claims, the case shall be closed after the entry of judgment against the Bear Valley Defendants.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, April 29, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge